**COLE SCHOTZ P.C.**
Seth Van Aalten, Esq.
Cameron A. Welch, Esq.
Krista L. Kulp, Esq.
1325 Avenue of the Americas – 19th Floor
New York, New York 10019
(212) 752-8000
(212) 752-8393 Facsimile

*Attorneys for Anthony M. Saccullo, in his capacity as Liquidating Trustee for the TEUM Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PARETEUM CORPORATION, *et al.*,[1] | Case No. 22-10615 (LGB) |
| Debtors. | (Jointly Administered) |

**MOTION OF ANTHONY M. SACCULLO, IN HIS CAPACITY AS LIQUIDATING TRUSTEE FOR THE TEUM LIQUIDATING TRUST, FOR ENTRY OF AN ORDER PURSUANT TO SECTION 350 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3022 AND LOCAL BANKRUPTCY RULE 3022-1, FOR A FINAL DECREE (I) CLOSING CHAPTER 11 CASES AND (II) TERMINATING APPOINTMENT OF CLAIMS AND NOTICING AGENT**

TO: THE HONORABLE LISA G. BECKERMAN
UNITED STATES BANKRUPTCY JUDGE

Anthony M. Saccullo, in his capacity as Liquidating Trustee (the "Trustee") for the TEUM Liquidating Trust (the "Liquidating Trust") hereby moves (the "Motion"), pursuant to Section 350 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Pareteum Corporation ("Pareteum") (7538); Pareteum North America Corp. (f/k/a Elephant Talk North America Corp.) (9623); Devicescape Holdings, Inc. (2909); iPass, Inc. (4598); iPass IP LLC (2550); Pareteum Europe B.V.; Artilium Group Ltd. (f/k/a Artilium PLC); Pareteum Asia Pte. Ltd.; and Pareteum N.V. (f/k/a Artilium N.V.) (collectively, the "Debtors"). The mailing address of the Debtors, solely for the purposes of notices and communications, is c/o Saccullo Business Consulting, LLC, 27 Crimson King Drive, Bear, DE 19701.

3022-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for Southern District of New York (the "Local Bankruptcy Rules"), for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") (i) issuing a final decree and closing the Debtors' chapter 11 cases (the "Chapter 11 Cases") and (ii) terminating the engagement of Verita Global f/k/a Kurtzman Carson Consultants, LLC ("Verita") as claims and noticing agent in the Chapter 11 Cases. In support of the Motion, the Trustee respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated February 1, 2012. This is a core proceeding under 28 U.S.C. § 157(b).

2. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

3. The statutory basis for the relief requested herein is Section 350 of the Bankruptcy Code, Bankruptcy Rule 3022 and Local Bankruptcy Rule 3022-1.

## RELIEF REQUESTED

4. By the Motion, the Trustee requests entry of an order substantially in the form of the Proposed Order (i) issuing a final decree and closing the Chapter 11 Cases and (ii) terminating the appointment of Verita. Pursuant to Local Rule 3022-1, a closing report concerning the Chapter 11 Cases is attached hereto as **Exhibit B** (the "Closing Report").

## BACKGROUND[2]

### A. The Chapter 11 Cases

5. On May 15, 2022 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On May 24, 2022, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

6. On June 30, 2022, the Court approved a sale of substantially all of the Debtors' assets [Dkt. No. 167], which closed on July 11, 2022 [Dkt. No. 212].

7. On July 8, 2022, the Court approved a global settlement among the Debtors, the Committee and the proposed purchasers of the Debtors' assets (the "Global Settlement"). [Dkt. No. 201]. Pursuant to the Global Settlement, the parties agreed to establish the Liquidating Trust as part of a chapter 11 liquidating plan, which would be funded by contributions from the proposed purchasers. The Global Settlement also provided that, subject to certain carveouts, the Liquidating Trust would receive certain rights in causes of action belonging to the Debtors' estates.

8. On July 11, 2022, the Court entered the Order Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [Dkt. No. 207] (the "Bar Date Order"), which established, *inter alia*, August 22, 2022 at 5:00 p.m. (ET) as the deadline for all persons and entities, other than governmental units, to file prepetition proofs of claim against the Debtors, including claims pursuant to section 503(b)(9) of the Bankruptcy Code. The Bar Date Order also established November 11, 2022 at 5:00 p.m. (ET) as the deadline for governmental units to file prepetition proofs of claim against the Debtors.

---

[2] Additional factual background regarding the Debtors, including their business operations, corporate and capital structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the Declaration of Laura W. Thomas in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings [Dkt. No. 3]. All docket citations refer to the jointly administered Chapter 11 Cases, *In re Pareteum Corporation, et al.* Case No. 22-10615 (LGB).

9. On October 7, 2022, the Court entered an order (the "Confirmation Order") confirming the Debtors' liquidating chapter 11 plan (the "Plan") [Dkt. No. 374].[3] Consistent with the Global Settlement, the Plan provides for the creation of the Liquidating Trust. Plan, § 5.4. On October 21, 2022 (the "Effective Date"), the Plan went effective, and the Liquidating Trust was formed [Dkt. No. 397].

10. Pursuant to the Plan, the Liquidating Trust is responsible for, among other things, liquidating the Liquidating Trust Assets, prosecuting any Retained Causes of Action to maximize recoveries for the benefit of the Beneficiaries, reconciling claims, and making Distributions in accordance with the Plan. *See* Plan, Art. 5.4(f)-(g).

11. Pursuant to the Plan, "[t]he Liquidating Trustee and the Liquidating Trust shall be discharged and/or dissolved, as the case may be, at such time as (i) all of the Liquidating Trust Assets have been distributed pursuant to the Plan and Liquidating Trust Agreement, (ii) the Liquidating Trustee determines, in his or her sole discretion, that the administration of any remaining Liquidating Trust Assets is not likely to yield sufficient additional Liquidating Trust Proceeds to justify further pursuit, or (iii) all Distributions required to be made by the Liquidating Trust under the Plan and the Liquidating Trust Agreement have been made." *See* Plan, Art. 5.4(j).

**B. The D&O Actions**

12. Prior to the Chapter 11 Cases, former directors and officers of the Debtors were named as defendants in various lawsuits, including a federal securities class action, a state court securities class action, and a shareholder derivative action (collectively, the "Shareholder D&O Actions"), and were subject to ongoing investigations by the U.S. Department of Justice and the U.S. Securities and Exchange Commission (the "SEC").

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed in the Plan.

13. On September 9, 2022, certain former directors and officers of the Debtors filed the *Motion for an Order Confirming and/or Determining that Proceeds of Certain D&O Insurance Policies are Not Subject to the Automatic Stay* [Dkt. No. 329] (the "Lift Stay Motion") to use the proceeds of the Debtors' D&O policies to fund a settlement of the Shareholder D&O Actions (the "Shareholder Settlement") in the proceeding styled *In re Pareteum Securities Litigation*, Case No. 19-cv-009767(AKH) pending in the United States District Court for the Southern District of New York.

14. Following the occurrence of the Effective Date, on November 2, 2022, the Trustee filed an objection to the Lift Stay Motion. [Dkt. No. 409] which was later supplemented on December 7, 2022 [Dkt. No. 449].

15. On December 5, 2022, the Trustee commenced an adversary proceeding against former directors and officers Robert H. Turner, Victor Bozzo, Yves Van Sante, Edward O'Donnell, Denis McCarthy, and Robert Mumby [Adv. Proc. No. 22-01177 (LGB)] (the "Trustee D&O Action"). The Trustee D&O Action asserted claims for breaches of fiduciary duty and other unlawful conduct by the defendants. These unlawful acts, centered around material misstatements in Pareteum's financial statements, ultimately led to Pareteum's financial ruin and the commencement of the Chapter 11 Cases. The Trustee D&O Action sought recovery from the defendants for undetermined amounts of damages and restitution arising from their breaches of fiduciary duty, waste of corporate assets, and abuse of control.

16. Following an evidentiary hearing held on December 12, 2022, the Court entered an Order granting the Lift Stay Motion on December 13, 2022 [Dkt. No. 459].

17. On April 3, 2023, the Trustee filed an objection to final approval of the Shareholder Settlement in the District Court. *In re Pareteum Securities Litigation*, Case No. 19-cv-009767(AKH) [Doc. No 284]. On May 3, 2023, the District Court entered a final order approving

the Shareholder Settlement [Doc. No 293]. The order also provides for what amounts to a "lock-up" of all remaining insurance proceeds to fund defense costs of the Debtors' former directors and officers in connection with ongoing criminal investigations, effectively foreclosing the primary means by which the Liquidating Trust could obtain additional funds for the benefit of the Debtors' creditors.

18. On September 28, 2023, certain of the defendants in the Trustee D&O Action were arrested and charged with securities fraud, conspiracy to commit securities fraud, false SEC filings, and improperly influencing the conduct of audits. *See* Indictment, *U.S. v. Bozzo and O'Donnell*, 23 Cr. 499 (S.D.N.Y. Sept. 28, 2023), attached as Exhibit A to Declaration of Tracy A. Burnett filed in the Trustee D&O Action at Adv. Proc. Dkt. No. 45. On that same day, the SEC filed a parallel lawsuit against Messrs. O'Donnell and Bozzo. *SEC. v. O'Donnell*, No. 1:23-cv-08543, Dkt. No. 1 (S.D.N.Y. Sept. 28, 2023).

19. On October 25, 2023, the Court so-ordered a stipulation staying the Trustee D&O Action pending resolution of these governmental actions and investigations [Adv. Proc. No. 22-01177, Adv. Dkt. No. 55].

20. On October 11, 2024, the SEC entered an administrative order determining that certain Pareteum executives engaged in a fraudulent scheme to improperly recognize revenue, leading to Pareteum overstating its revenue by $12 million for fiscal year 2018 and by $27 million for the first and second quarters of 2019 combined in its financial statements filed with the SEC (the "SEC Order"). The SEC Order found that Robert H. Turner was aware of signs that the revenue was being improperly recognized, but he did not take reasonable steps to determine if that was the case prior to signing these financial statements as Pareteum's Chief Executive Officer.

21. Without admitting or denying the SEC's findings, Mr. Turner consented to the SEC Order finding that he violated the antifraud provisions of Section 17(a)(2) and (3) of the Securities

Act of 1933, and Section 304 of the Sarbanes-Oxley Act of 2002 ("SOX"). The SEC Order requires Mr. Turner to cease and desist from further violations of the charged provisions and to pay a $75,000 penalty. The SEC Order also requires, under Section 304 of SOX, that Mr. Turner reimburse Pareteum or its successor in interest $267,118 that he received as bonus payments he previously received from Pareteum (the "Reimbursement Payment"). As of October 10, 2025, Mr. Turner had paid the full amount of the Reimbursement Payment to the Liquidating Trust.

22. Following the District Court's approval of the Shareholder Settlement and decision to allocate all remaining insurance proceeds to defense costs, the Trustee made considerable efforts to investigate whether any of the defendants in the Trustee D&O Action hold assets that could potentially fund a material settlement or be used to satisfy a judgment. In connection therewith, the defendants voluntarily provided the Trustee with the requested financial information. The Trustee determined that none of the defendants have assets sufficient to justify the continued pursuit of the Trustee D&O Action. Accordingly, on January 21, 2026, the Trustee filed a Stipulation of Dismissal. [Adv. Proc. No. 22-01177, Dkt. No. 58].

**C. Trust Administration and Claims Process**

23. Pursuant to Articles 1.26 and 7.2 of the Plan, objections to Claims were to be filed no later than 180 days after the Effective Date (*i.e.* April 19, 2023), or "as may be specifically fixed by the Plan, the Confirmation Order, the Bankruptcy Rules, or a Final Order." (*See* Plan, Art. 1.26 and 7.2) (the "Claims Objection Deadline"). The Plan also provides "the Claims Objection Deadline may be extended one or more times by the Bankruptcy Court upon the filing of a notice by the Debtors or the Liquidating Trustee, as applicable." (*See* Plan, Art. 1.26 and 7.2).

24. The Court has entered six orders extending the Claims Objection Deadline upon motions filed by the Trustee [Dkt. Nos. 40, 540, 565, 590, 604, 636]. The Claims Objection Deadline is presently scheduled for April 16, 2026.

25. Since the Effective Date, the Trustee has worked diligently to resolve as many claims as possible within its severe budgetary constraints and has resolved most pending administrative expense claims against the Debtors.[4] The Trustee has also conscientiously administered the Liquidating Trust, including, without limitation: prosecuting the Trustee D&O Action, cooperating with the Assistant United States Attorney for the Southern District of New York in connection with its criminal prosecution of certain former officers of the Debtors and providing responses to requests for information and documents in connection therewith; winding down the Debtors' 401(k) plan; providing transition services for the purchasers of the Debtors' assets and coordinating the resolution of their competing claims to certain of the Debtors' assets (including accounts receivable); investigating claims and causes of action other than the Trustee D&O Action and obtaining a $725,000 settlement of a preferential transfer claim against the Debtors' prepetition counsel; overseeing the limited winding down of certain of the Debtors' former international subsidiaries and terminating legacy employees in connection therewith; deregistering the Debtors' publicly registered shares; and fulfilling the Liquidating Trust's tax and other reporting requirements in connection with the wind down of the Debtors and these Chapter 11 Cases.

[4] On September 16, 2022, the Debtors filed their First Omnibus Objection to Claims of Certain Equity Securities Holders seeking to reclassify Claim Nos. 26, 72, 77, 91, 112, 127, 128, 131, 133, 135 (the "First Omnibus Objection"). [Dkt. No. 336]. All claims subject to the First Omnibus Objection have been resolved. [Dkt. Nos. 399, 442, 461, 525]. On that same date, the Debtors filed an Objection to Claims of Robert H. Turner [Claim Nos. 81 and 129] [Dkt. No. 337]. Pursuant to a stipulation filed on September 22, 2023, the Trustee and Mr. Turner have stipulated to the withdrawal, without prejudice, of this objection. [Dkt. No. 526]. The Trustee has also resolved all objections to the Debtors' Notice of Cure Costs and Proposed Assumption and Assignment of Executory Contracts and Unexpired Leases [Dkt. No. 77].

26. As of January 21, 2026, pursuant to the Claims Register[5] maintained by Verita, the aggregate amount of asserted but unresolved Claims (adjusted to remove presumed duplicates)[6] :

(a) **Secured Claims**: Eleven (11) Claims asserting approximately $54.05 million;[7]

(b) **Administrative Expense Claims**: Fifteen (15) Claims asserting $926,761.60;

(c) **Priority Claims**: Thirty-one (31) Claims asserting approximately $1.36 million;

(d) **General Unsecured Claims**: Two-hundred-forty-one (241) Claims asserting approximately $29.04 million;

**Totaling**: Two hundred ninety-eight (298) Claims asserting over $85.38 million.

27. As the Trustee previously advised creditors and interested parties in the *Status Report by Anthony M. Saccullo, in His Capacity as Liquidating Trustee for the TEUM Liquidating Trust*, filed on February 3, 2025 [Dkt. No. 601] (the "Status Report"), the Liquidating Trust was not funded with assets sufficient to pay administrative expense claims in full and distributions on account of general unsecured claims depended on the successful prosecution or resolution of the Trustee D&O Action that has now been dismissed in the absence of a meaningful prospect of recovery.

[5] In addition to the numbers and amounts reflected in the Motion, the Claims Register presently reflects fifty-eight (58) Claims asserted without a liquidated value that are identified either as: (i) Unliquidated (33 Claims); (ii) Foreign (19 Claims); and (iii) Blank (6 Claims), which have not been included in the numbers presented in the Motion, but represent additional Claims that would require review and adjudication by the Trustee were the Chapter 11 Cases to continue.

[6] Without adjusting for presumed duplicative claims, there are 361 Claims asserting over $532.94 million.

[7] Although the Trustee has not expended resources to formally review these claims, the three (3) (after adjusting for presumed duplicates) largest claims accounting for over 99% of the total would very likely be deemed "satisfied" since they are asserted by the two (2) Purchasers (*i.e.*, Channel Ventures Group, LLC and Circles MVNE Pte Ltd.). This would leave eight (8) Claims collectively asserting $40,944.81 to be reviewed and adjudicated by the Trustee if the Chapter 11 Cases were to continue.

28. The Liquidating Trust has insufficient assets available either to satisfy outstanding administrative expense claims in full[8] or for distribution to creditors and no reasonable prospect of recovering material funds in the future. For these reasons and those set forth below, Trustee seeks entry of a final decree closing these Chapter 11 Cases.

**BASIS FOR RELIEF**

**A. Closing the Chapter 11 Cases**

29. Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a). Bankruptcy Rule 3022, which implements Section 350 of the Bankruptcy Code, provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case." Fed. R. Bankr. P. 3022.

30. The term "fully administered" is not defined in either the Bankruptcy Code or the Bankruptcy Rules. The 1991 Advisory Committee Note to Bankruptcy Rule 3022, however, sets forth the following non-exclusive factors to be considered in determining whether a case has been fully administered:

(a) whether the order confirming the plan has become final;

(b) whether deposits required by the plan have been distributed;

(c) whether the property proposed by the plan to be transferred has been transferred;

(d) whether the debtor [or its successor] has assumed the business or management of the property dealt with by the plan;

(e) whether payments under the plan have commenced; and

[8] *See* Closing Report, **Exhibit B** *infra*.

(f) whether all motions, contested matters, and adversary proceedings have been finally resolved.

*See* Fed R. Bankr. P. 3022. Advisory Committee Note (1991). *See, e.g., In re Endo Int'l plc*, 666 B.R. 221 (Bankr. S.D.N.Y. 2024) (recognizing that bankruptcy courts weigh the factors contained in the Advisory Committee Note when deciding whether to close a case); *In re Motors Liquidation Co.*, 625 B.R. 605, 614-15 (Bankr. S.D.N.Y. 2021) (same); *In re Johnson*, 402 B.R. 851, 856 (Bankr. N.D. Ind. 2009) (same); *In re Union Home & Indus. Inc.*, 375 B.R. 912, 916 (B.A.P. 10th Cir. 2007) (same).

31. The Editors' Comment to Bankruptcy Rule 3022 describes it as "a flexible Rule to permit the court to determine that an estate is fully administered and should be closed even though payments or other activities involving the debtor and its creditors might continue." *In re Gould*, 437 B.R. 34, 37-38 (Bankr. D. Conn. 2010) (quoting Fed. R. Bankr. P. 3022 ed. cmt). The Editors' Comment further notes that "the Advisory Committee interprets 'fully administered' very loosely and encourages courts to use substantially more discretion in deciding whether to close a Chapter 11 case than Code § 350 and the Rule literally read." *Id.*

32. Courts in this district have recognized that the above factors are non-exclusive and are "plainly an aid or checklist that serves to insure that there is no unfinished business before the Court or in the case." *In re Avaya Inc.*, 19-cv-5987 (AJN), 2020 WL 5051580, at *2 (Bankr. S.D.N.Y. Apr. 30, 2020); *In re Kliegl Bros. Universal Elec. Stage Lighting Co., Inc.*, 238 B.R. 531, 542 (Bankr. E.D.N.Y. 1999); *In re IDC Servs., Inc.*, 1998 U.S. Dist. LEXIS 13449, at *10-11 (S.D.N.Y. Aug. 28, 1998) (stating that the factors provide a "flexible standard" and holding that the bankruptcy court was not clearly erroneous in closing the debtor's case when the plan had been confirmed and all disputed claims, save one, had been resolved). The entry of a final decree is essentially an administrative task. *In re Avaya*, 2020 WL 5051580, at *2; *Kliegl Bros*, 238 B.R. at 541; *see In re Gould*, 437 B.R. at 38 (noting that a final decree "simply delineates on the docket

that the case is closed; it represents the administrative conclusion of the case for record keeping purposes") (quoting *In re Fibermark, Inc.*, 369 B.R. 761, 765, 767 (Bankr. D. Vt. 2007)).

33. In addition to the factors set forth in the Advisory Committee Note, in determining whether to issue a final decree, courts have considered whether the plan of reorganization has been substantially consummated. *Johnson*, 402 B.R. at 856 (considering substantial consummation as a factor in determining whether to close a case); *In re Gates Cmty. Chapel of Rochester, Inc.*, 212 B.R. 220, 224 (Bankr. W.D.N.Y. 1997) (same); *Motors Liquidation*, 625 B.R. at 614-15 (same); Endo, 666 B.R. at 226-227 (same).

34. Under section 1101(2) of the Bankruptcy Code, "substantial consummation" means: "(a) transfer of all or substantially all of the property proposed by the plan to be transferred; (b) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (c) commencement of distribution under the plan. 11 U.S.C. § 1101(2)." *Endo*, 666 B.R. at 226.

35. Here, the Chapter 11 Cases have been "fully administered" within the meaning of section 350 of the Bankruptcy Code and the Plan has been "substantially consummated" within the meaning of section 1101(2) of the Bankruptcy Code, making it appropriate for the Court to enter a final decree closing the Chapter 11 Cases because, among other things:

(a) the Confirmation Order has become final and non-appealable;

(b) the Debtors are no longer operating entities;

(c) any property transfers provided by the Plan, to the extent applicable, have been completed;

(d) the Liquidating Trust formed pursuant to the Plan assumed all obligations of the Debtors under the Plan, including the reconciliation and distributions on account of any Allowed Claims;

(e) there are no open adversary proceedings or contested matters in the Chapter 11 Cases;

(f) the Liquidating Trust assumed the management of substantially all of the property dealt with by the Plan; and

(g) all transactions, payments, and distributions required by the Plan are being or will be implemented by the Trustee in a manner consistent with the Plan.

36. Furthermore, as the Trustee has consistently advised in the Status Report and its numerous motions to extend the Claims Objection Deadline, creditor recoveries in these Chapter 11 Cases were always dependent on a successful resolution of the Trustee D&O Action, which has now been dismissed given the Trustee's inability to access D&O policy proceeds and the defendants' lack of financial wherewithal to independently fund a material settlement or judgment. Consequently, the Liquidating Trust has no assets to distribute to creditors and no prospect of obtaining distributable assets in the future. There is simply no reason to keep these Chapter 11 Cases open.

37. As of the date of this Motion, the Trustee has paid all quarterly fees owed to date to the U.S. Trustee and has made arrangements to satisfy any remaining U.S. Trustee quarterly fees when they become due and payable in connection with this Motion and the Closing Date.

38. Based on the foregoing, the Trustee requests entry of a final decree closing the Chapter 11 Cases.

**B. Terminating Verita as Claims and Noticing Agent**

39. Pursuant to the *Order (I) Authorizing and Approving the Appointment of Kurtzman Carson Consultants LLC [n/k/a Verita Global] as Claims and Noticing Agent to the Debtors, Effective Nunc Pro Tunc to the Petition Date, and (II) Granting Related Relief* [Dkt. No. 43] (the "Claims Agent Order"), Verita was retained to, among other things, receive, maintain, record and otherwise administer proofs of claim filed in these Chapter 11 Cases. As all allowed payments under the Plan are completed and no Claims distributions will be made, the Trustee no longer requires the services of Veritas other than to serve the instant Motion and Closing Report.

Accordingly, the Trustee submits that the termination of Verita's engagement as claims and noticing agent is appropriate under the circumstances.

## NOTICE

40. Notice of this Motion and the Closing Report will be given to: (i) the U.S. Trustee; and (ii) all parties entitled to notice pursuant to Bankruptcy Rule 2002. The Trustee submits that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

41. No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court entry of the Proposed Order and Final Decree, substantially in the form attached hereto as Exhibit A, (i) issuing a final decree and closing the Chapter 11 Cases, (ii) terminating the appointment of Verita, and (iii) granting such other and further relief as the Court deems appropriate under the circumstances.

DATED: New York, New York
February 24, 2026

**COLE SCHOTZ P.C.**

By: *\/s/ Krista L. Kulp*

Seth Van Aalten, Esq.
Cameron A. Welch, Esq.
Krista L. Kulp, Esq.
1325 Avenue of the Americas – 19th Floor
New York, New York 10019
(212) 752-8000
(212) 752-8393 Facsimile
Email: svanaalten@coleschotz.com
cwelch@coleschotz.com
kkulp@coleschotz.com

*Attorneys for Anthony M. Saccullo, in his capacity as Liquidating Trustee, for the TEUM Liquidating Trust*